**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SUSIE JOHNSON,

        Plaintiff,

vs.                                             CASE NO. 3:07-cv-424-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB"). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

**I. Procedural History**

On September 1, 2004, Plaintiff filed applications for a period of disability and DIB, alleging disability beginning January 1, 2004 (Tr. 13).[2] Plaintiff's application was denied initially and upon reconsideration (Tr. 40, 46). Pursuant to Plaintiff's request, an administrative hearing was conducted on August 22, 2006, in Jacksonville, Florida, before Administrative Law Judge JoAnn L. Anderson (the "ALJ") (Tr. 244-87). The ALJ found that Plaintiff was not disabled by decision dated November 17, 2006 (Tr. 10-21). On March 30, 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 4). Plaintiff now appeals under 42 U.S.C. Section 405(g).

**II. Standard of Review**

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i-v);[3] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's

---

[2] At the hearing, Plaintiff, through her representative, amended her alleged onset date of disability to April 2, 2004 (Tr. 13).

[3] All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must

determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff was 49 years old at the time of the ALJ's decision (Tr. 253). Plaintiff has a certificate of General Educational Development ("GED") and past relevant work experience as a nurse assistant; medical assistant; and salvage laborer (Tr. 124, 253).

**A. Medical Evidence**

Plaintiff alleges disability as of April 2, 2004 as a result of two work related injuries (Doc. #13 at 2). The first incident occurred on November 5, 2002 when Plaintiff injured her lower back while working at All Saints Nursing Home catching a patient who was falling backwards (Tr. 143). Plaintiff maintains the second injury occurred when she slipped and

fell while working for the same employer in April 2004 (Tr. 260).[4]  The ALJ, however, references a third work related injury that occurred on October 28, 2004 and involved Plaintiff being hit by a laundry cart (Tr. 15; *see also* Tr. 188).[5]  Although Plaintiff's original injury occurred in 2002, she continued to work full-time until April of 2004 (Tr. 15).  From April 2004 until she was terminated on May 12, 2005, Plaintiff worked part-time at All Saints Nursing Home (Tr. 121).

From July 28, 2004 through August 24, 2004, Plaintiff underwent left L2-3, L3-4, L4-5, and L5-S1 facet injections, trigger point injections, and a cluneal nerve block at the Jacksonville Spine Center under the care of Claudio Vincenty, M.D. ("Dr. Vincenty") and Keith Rawlinson, PA-C[6] ("Mr. Rawlinson") (Tr. 185-94).  Plaintiff reported to Mr. Rawlinson that she experienced partial relief of her low back pain during this time period (Tr. 185-94).

On September 24, 2004, Plaintiff was seen by Gregory Keller, M.D. ("Dr. Keller") at the Jacksonville Orthopaedic Institute for evaluation of back pain, which she attributed to two injuries (the 2002 work injury and the subsequent injury in March of 2003 when Plaintiff fell) (Tr. 143-46).  Examination of Plaintiff's back revealed no deformity or scars (Tr. 144).  Dr. Keller reported Plaintiff walked with a mild antalgic gait, sitting examination revealed intact deep tendon reflexes of the knees and ankles, motor strength was intact in all groups of both upper and lower extremities, and straight leg raising was negative bilaterally sitting

---

[4]Plaintiff testified at the hearing that this injury resulted in a subsequent reduction in work hours (Tr. 260).  The Court, however, cannot find a report of this injury in the record.

[5]Additionally, the Court's review of the record indicates Plaintiff was injured a fourth time, on March 21, 2003, when she fell and re-injured her back (Tr. 143).

[6]PA-C stands for a Physician Assistant, Certified.  National Commission on Certification of Physician Assistants ("NCCPA"), http://www.nccpa.net (last visited Sept. 29, 2008).

(Tr. 144). Additionally, Dr. Keller reviewed an MRI dated May 11, 2004, and his impression was mechanical back and leg pain without evidence of nerve root compression (Tr. 144-45). Dr. Keller reported that Plaintiff could continue working as a Certified Nurse Assistant ("CNA") (Tr. 145).

On October 8, 2004, Plaintiff was again seen by Dr. Vincenty (Tr. 189). Examination revealed central low back pain and right leg pain with intact motor function and sensation (Tr. 189). Dr. Vincenty and Mr. Rawlinson stated that, in their opinion, Plaintiff had essentially reached maximum medical improvement ("MMI") (Tr. 189).

Plaintiff was referred by Dr. Vincenty to physical therapist, Anita Davis, PT ("Ms. Davis") for a Functional Capacity Evaluation ("FCE") at Brooks Rehabilitation on October 22, 2004 (Tr. 126). Ms. Davis reported Plaintiff was able to stand, walk, reach up, reach out, bend, squat, occasionally twist, and frequently sit (Tr. 126). Ms. Davis additionally reported Plaintiff walked slowly with a limp and had poor balance, and that she was able to lift six (6) pounds occasionally (Tr. 126). Ms. Davis noted that Plaintiff was self limiting[7] in 80 percent of both activity testing and dynamic lifting and that she did not notice signs of maximum physical exertion (Tr. 126). Ms. Davis observed increased breathing frequently, yet attributed this to general deconditioning rather than maximum physical exertion (Tr. 126). Ms. Davis concluded that, based on the evaluation, Plaintiff was able to work at the sedentary physical demand level (Tr. 126).

On November 2, 2004, Plaintiff was seen by Mr. Rawlinson after being hit in the back by a laundry cart on October 28, 2004 (Tr. 188). Examination revealed paralumbar

---

[7]Self limiting is noted when a client reports pain as a limiting factor although their pain report remains the same and signs of physical exertion are not noted (Tr. 139).

tenderness extending throughout the superior gluteal regions bilaterally (Tr. 188). Throughout the remainder of November 2004, Plaintiff underwent additional trigger point injections (Tr. 185-87). On February 22, 2005, Plaintiff complained of severe low back pain (Tr. 183). Examination revealed a severely antalgic gait and paralumbar tenderness (Tr. 183). From March 20, 2005 to August 24, 2005, Plaintiff underwent multiple trigger point injections (Tr. 175-82).

On August 18, 2005, Mr. Rawlinson completed a work status report regarding Plaintiff (Tr. 176). The report stated Plaintiff was limited to part-time work (Tr. 176). The report also placed the following restrictions on Plaintiff: no bending, no stooping, no working with heavy machinery, no above ground work, no climbing, no pushing/pulling, and no overhead work (Tr. 176). The report additionally stated Plaintiff could lift no more than ten (10) pounds (Tr. 176).

On January 26, 2006, Plaintiff was evaluated by D. Quinlan, M.D. ("Dr. Quinlan") at the request of the Social Security Administration (Tr. 198-201). Dr. Quinlan reported Plaintiff had a normal gait and did not require an assistive device for ambulation; had no difficulty getting on and off the exam table or up and out of a chair; her grip strength was 5/5 bilaterally; she had a full range of motion of all extremities and all joints; was able to walk on her heels and her toes, squat, and heal-to-toe walk (Tr. 199-200). Dr. Quinlan found Plaintiff had minimal limitation secondary to her back pain (Tr. 200).

On February 22, 2006, state agency medical consultant, Eric Puestow ("Mr. Puestow") from Disability Determination Services ("DDS"), completed a Residual Functional Capacity ("RFC") assessment of Plaintiff (Tr. 223-30). Mr. Puestow noted Plaintiff could occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, could stand and/or walk

about six (6) hours in an eight (8) hour workday, could sit about six (6) hours in an eight (8) hour workday, and had unlimited push/pull capabilities (Tr. 224).

Plaintiff received another series of trigger point injections from March 21, 2006 to April 20, 2006 (Tr. 239-41). X-rays of the cervical spine dated May 11, 2006 were normal (Tr. 237). Plaintiff saw Mr. Rawlinson on June 2, 2006, stating she continued to have back pain and a headache (Tr. 236). Examination revealed central low back pain and paralumbar tenderness (Tr. 236). Plaintiff was diagnosed with degenerative disc disease of the lumbosacral spine with myofascial pain syndrome and herniated nucleus pulposus at L4-5 (Tr. 236).

**B. The ALJ's Decision**

In her opinion dated November 17, 2006, the ALJ found Plaintiff suffered from degenerative disc disease of the lumbar spine and myofascial pain syndrome (Tr. 15). The ALJ found Plaintiff's impairments to be severe within the meanings of the Regulations (Tr. 15). The ALJ went on to find, however, that the aforementioned impairments, either alone or in combination, did not meet or equal an impairment listed in 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Tr. 16).

After careful review of the entire record, the ALJ found Plaintiff retained the RFC to perform sedentary work (Tr. 16).[8] Specifically, the ALJ found Plaintiff could lift and carry ten (10) pounds occasionally and less than ten (10) pounds frequently, able to sit for up to six (6) hours in an eight (8) hour workday, and able to stand and/or walk for up to two (2)

---

[8] Sedentary work involves lifting no more than ten (10) pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 CFR § 404.1567(a).

8

hours in an eight (8) hour workday (Tr. 16).  The ALJ additionally found that Plaintiff cannot climb, stoop, bend, perform overhead work with her upper extremities, work at heights, or push/pull to operate hand or foot controls (Tr. 16).

After determining Plaintiff's RFC and taking testimony from vocational expert, Melissa Brooks (the "VE"), the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 19).  The ALJ found, however, that despite Plaintiff's work restrictions, Plaintiff could adjust to other work that exists in substantial numbers in the national and local economy (Tr. 19).  Relying on the testimony of the VE, the ALJ found that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform the occupations of food and beverage order clerk; telephone quotation clerk; and addresser (Tr. 20).  *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 209.567-014, 237.367-046, 209.587-010 (4th Ed. 1991).  Based in part on the VE's testimony and after finding Plaintiff's allegation that she is unable to perform all work was unsupported by the evidence as a whole, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act ("the Act") (Tr. 19-20).

## IV. Analysis

Plaintiff claims the ALJ erred by failing to fully and fairly evaluate the evidence or in the alternative that the ALJ substituted her opinion for that of the medical professionals (Doc. #13 at 5).  Specifically, Plaintiff asserts the ALJ failed to give adequate weight to the work status report completed by Mr. Rawlinson, who had a long standing relationship with Plaintiff (Doc. #13 at 5-6).[9]  The Court, however, does not find this argument persuasive.

---

[9]Plaintiff was seen by Dr. Vincente and Mr. Rawlinson at the Jacksonville Spine Center from July 28, 2004 through June 2, 2006 (Tr. 176-94, 236-43).

The Court finds the ALJ properly discounted Mr. Rawlinson's opinion based on the objective medical evidence and the reports of consultative examiners. In addition, the Court finds the reasons articulated by the ALJ for discrediting the work status report completed by Mr. Rawlinson are supported by substantial evidence of record.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards*, 937 F.2d at 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is consistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d at 583.

A physician's assistant, however, is not considered an acceptable medical source; thus, their opinion cannot establish the existence of an impairment. *Crawford v. Commissioner of Social Security*. 363 F.3d 1155, 1160 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1513 (excluding physician's assistants from the list of "acceptable medical sources" whose opinions may be considered in determining the existence of an impairment). As such, a physician's assistant's opinion of disability is not entitled to great weight. *Monaghan v. Astrue*, No. 5:07-CV-134, 2008 WL 4202309, slip op. at *2 (M.D. Ga. Sept. 5, 2008)[10] (finding the report in question was not completed by an acceptable medical

---

[10] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

source and was only signed by a doctor with whom the plaintiff had no extensive relationship or treating history).

Here, Plaintiff was referred to Ms. Davis by her treating physician, Dr. Vincenty, for an FCE in October of 2004 (Tr. 126). Ms. Davis reported on October 22, 2004, that Plaintiff gave "relatively reliable" efforts and that, based on her efforts, Plaintiff would be able to work at the sedentary physical demand level (Tr. 126). On August 18, 2005, however, Mr. Rawlinson (Dr. Vincenty's physician's assistant) completed a work status report stating Plaintiff could only work on a part-time basis (Tr. 176). The ALJ addressed Mr. Rawlinson's report, but determined the limitations in the report were not supported by objective medical findings or the opinions of consultative examiners (Tr. 19).

In support of this determination, the ALJ noted a more specific assessment of Plaintiff's ability to function (the FCE of 2004) (Tr. 19), wherein Plaintiff was found to have the ability to perform sedentary work on a full-time basis (Tr. 126). This assessment was done at the request of Dr. Vincenty and involved a wide variety of measuring techniques in order to determine Plaintiff's functional capacity (Tr. 126-41). Based on Plaintiff's performance, Ms. Davis noted Plaintiff was self limiting in 80 percent of both activity testing and dynamic lifting, and that she did not notice signs of maximum physical exertion (Tr. 126). Nevertheless, Ms. Davis concluded Plaintiff could perform full-time sedentary work (Tr. 126).

In her decision, the ALJ noted Mr. Rawlinson's August 18, 2005 work status report lacked specificity and was conclusory in nature (Tr. 19). The report stated Plaintiff could only work part-time; however, it did not specify the reason(s) for such limitations (Tr. 176). Additionally, the report was not signed by Plaintiff's treating physician, Dr. Vincenty (it was

11

only signed by Mr. Rawlinson) (Tr. 176).  The ALJ considered the work status report completed by Mr. Rawlinson and discounted Mr. Rawlinson's opinion that Plaintiff can only perform part-time work based on other information contained within the record.  The ALJ stated the report was inconsistent with the objective medical evidence and the reports of consultative examiners (Tr. 19).

In regards to the objective medical evidence, the ALJ cited a MRI dated May 11, 2004, which revealed desiccation of Plaintiff's L4-L5 and L5-S1 discs without a focal disc herniation (Tr. 17; *see also* Tr. 144).  The ALJ noted that Dr. Keller, who reviewed the MRI report, stated his impression was mechanical back and leg pain without evidence of nerve root compression, and that she could continue working as a CNA (Tr. 17; *see also* Tr. 145).  The ALJ additionally noted that the results of x-rays of Plaintiff's cervical spine, dated May 11, 2006, were normal (Tr. 18; *see also* Tr. 237).

In regards to the reports of consultative examiners, the ALJ noted Plaintiff was examined by Dr. Quinlan on January 22, 2006 for evaluation for Social Security disability (Tr. 18; *see also* Tr. 198).  Dr. Quinlan reported Plaintiff had a normal gait and did not require an assistive device for ambulation; had no difficulty getting on and off the exam table or up and out of a chair; grip strength of 5/5 bilaterally; had a full range of motion of all extremities and all joints; was able to walk on her heels and her toes, squat, and heal-to-toe walk (Tr. 199-200).  Dr. Quinlan's impression was that Plaintiff had minimal limitation secondary to back pain and that the only consistent finding was of tenderness to palpation diffusely across her lower back (Tr. 200).

Additionally, the undersigned notes that, on February 22, 2006, Mr. Puestow completed an RFC assessment of Plaintiff (Tr. 223-30).  Mr. Puestow found Plaintiff could

occasionally lift twenty (20) pounds, frequently lift ten (10) pounds, could stand and/or walk about six (6) hours in an eight (8) hour workday, could sit about six (6) hours in an eight (8) hour workday, and that Plaintiff had unlimited push/pull capabilities (Tr. 224). Mr. Puestow stated, in his opinion, Plaintiff's allegations of pain and dysfunction exceeded the objective information in the file, and that there was no objective basis for either the inability to perform full-time work or for a sedentary work restriction (Tr. 228-29).

For the aforementioned reasons, the Court finds the ALJ properly discounted Mr. Rawlinson's work status report by finding it was both inconsistent with the objective medical evidence of record and the opinions of consultative examiners. This is especially significant in light of the fact that Dr. Vincenty never signed the report at issue, and since physician's assistants opinions as to disability are not entitled to great weight under the Regulations. *Crawford,* 363 F.3d at 1160; *see also* 20 C.F.R. § 404.1513. Additionally, the Court finds the ALJ's determination in this regard is supported by substantial evidence of record as outlined above.

## V. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2008.

Copies to:
Counsel of Record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge